IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TOMMY DILLE, | ) | CASE NO. 1:06 CV 448 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| LVI ENVIRONMENTAL SERVICES, | ) | |
| INC., *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| Defendants. | ) | |

## I.  Introduction

Before the Court[1] in this case alleging various claims of discriminatory practice and retaliatory discharge[2] is a motion for summary judgment filed by the defendant employer LVI Environmental Services and individual LVI supervisors (collectively, "LVI").[3]  Plaintiff Tommy Dille has responded in opposition to this motion,[4] and LVI has replied.[5]

For reasons similar to those given in a prior decision awarding summary judgment to Dille's union,[6] and as more fully stated below, the Court finds that LVI is entitled to summary judgment in its favor as to all claims asserted against it.

---

[1] The parties have consented to magistrate judge's jurisdiction.  ECF # 20.

[2] ECF # 14.

[3] ECF # 53.

[4] ECF # 54.

[5] ECF # 56.

[6] ECF # 58.

## II.  Facts

In a prior opinion, this Court has set forth at some length the undisputed facts underlying this case.[7] That factual history will not be repeated.  However, a brief restatement of the facts as they relate to the claims now at issue against Dille's employer is appropriate.

Essentially, Dille, an Africa-American veteran with a breathing condition, was assigned by his union to work for LVI on an asbestos removal job.  After obtaining a respirator from LVI, which permitted Dille to fully perform his job despite his sinus problem, he commenced work.

However, after only a short time on the job, LVI supervisors observed that Dille was "not working" and informed Dille of that observation.  Dille, who believed he was acting appropriately and no differently than white workers, asked his LVI crew leader if these comments were racially motivated.  He was told they were not, but LVI and the union decided to transfer Dille to another work crew in the hope of providing him a fresh start.

Again, after only a brief time on his new crew, Dille was reproached for not working.  Again, Dille believed the remarks directed to him were unfair and racially motivated.  And again, he complained about the comment, this time addressing his complaint to his union but not LVI.

Notwithstanding these complaints of unfairness, Dille was then laid off by LVI for lack of productivity.  He was laid off together with two other allegedly non-productive workers, both of them white.

--------

[7] *Id.*

Subsequent to the layoff, Dille filed a claim of race discrimination and retaliation against LVI with the EEOC.  Upon investigation, the EEOC was unable to establish a violation and so issued Dille a right to sue letter.

Along with the EEOC complaint, Dille also filed a grievance with his union.  As did the EEOC, the union concluded after its investigation that Dille had not established a supportable claim and determined not to prosecute the matter further.

Dille then filed this action, asserting that LVI: (1) racially discriminated against him on the job in violation of federal and Ohio law; (2) discriminated against him due to his disability in violation of Ohio law; (3) retaliated against him for planning to file a complaint with the EEOC; (4) wrongfully terminated him in violation of public policy; (5) violated federal and state veteran protection laws; and (6) breached the collective bargaining agreement.  This suit also alleges that the individual LVI supervisors discriminated against Dille on racial and disability grounds.

### III.  Discussion

**A.      Summary judgment standard**

The standard for reviewing motions for summary judgment is well-established and well-known.  Federal Rule of Civil Procedure provides in pertinent part:

> The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to essential elements of the non-moving party's case.[8]  If the moving party satisfies this burden, the burden then shifts to the non-moving party to set forth specific facts showing the existence of a triable issue of material fact.[9]

Determination that there is a dispute as to an issue of material fact requires the application of evidentiary standards.[10]  However, "[a] non-moving party need not 'produce evidence in a form that would be admissible at trial to avoid summary judgment.' Instead, the relevant inquiry is whether the non-moving party has designated 'specific facts showing there is a genuine issue for trial.'"[11]  Nevertheless, the non-moving party may not simply rely on the mere allegations of its pleadings.[12]

Courts must evaluate the evidence "in the light most favorable to the party opposing the motion."[13]  However, in doing so the reviewing court must not weigh the evidence so as to determine the truth of the matter, but merely ascertain if there is a genuine issue of material fact for trial.[14]

---

[8] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-97 (1986).

[10] *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

[11] *O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 505 (6th Cir. 1992) (internal citations omitted).

[12] *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[13] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[14] *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

A dispute concerning a material fact is "genuine," thus placing the matter beyond the reach of summary judgment, "if the evidence is such that a reasonable jury could render a verdict for the non-moving party."[15]  A fact is "material" if it is required to establish "an essential element of [the non-moving party's] case with respect to which it has the burden of proof."[16]

In the end, as the Sixth Circuit has stated, summary judgment is designed to allow the movant to "challenge the opposing party to 'put up or shut up' on a critical issue."[17]

## B.    Racial discrimination

Dille contends that LVI violated both federal and state anti-discrimination statutes by discriminating against him because of his race.[18]

Specifically, he asserts that LVI supervisors were racially motivated when they criticized his work performance, since a white employee in the same circumstance was not criticized; that he made internal complaints of discrimination to LVI and his union over these remarks; and that he was then improperly terminated because of his race.[19]

---

[15] *Anderson*, 477 U.S. at 248.

[16] *Celotex Corp.*, 477 U.S. at 323.

[17] *BDT Products v. Lexmark Int'l*, 124 F. App'x, 329, 331 (6th Cir. 2005).

[18] *See*, ECF # 54 at 9-11.

[19] *Id*.

LVI initially argues that Dille cannot show that the white employee was similarly situated, thus precluding Dille from establishing a prima facie case of racial discrimination.[20] Moreover, it contends that even if Dille is credited with setting forth a prima facie case of racial discrimination, LVI has an honest belief in its legitimate, non-discriminatory reason for terminating Dille – poor work performance.[21]

### 1.    *Applicable law*

Under both federal and Ohio law,[22] "[a] plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant or by showing the existence of circumstantial evidence which creates the inference of discrimination."[23]

---

[20] ECF # 53 at 7-8.

[21] *Id*. at 9.

[22] Racial discrimination in employment claims under Ohio law are analyzed pursuant to federal law standards applicable to the same claim and so Dille's claim here is reviewed under the single federal test.  *Scott v. FirstMerit Corp*., 167 F. App'x 480, 487 (6th Cir. 2006) citing *Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999) ("The Ohio courts have held that the evidentiary standards and burdens of proof applicable to a claimed violation of Title VII ... are likewise applicable in determining whether a violation of Ohio Revised Code § 4112 has occurred.  Thus, the federal case law governing Title VII actions is generally applicable to cases involving alleged violations of Chapter 4112.").

[23] *Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1246 (6th Cir.1995) (citations omitted).

If, as here, the plaintiff does not assert that there is direct evidence of racial discrimination in employment,[24] the discrimination claim must be addressed pursuant to the familiar burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas*[25] to establish indirect evidence of discrimination. Under that standard, as formulated by the Sixth Circuit in *Mitchell v. Toledo Hospital*,[26] Dille must establish his prima facie case by showing that: (1) he was a member of a protected class; (2) he was discharged; (3) he was qualified for the position; and (4) for the same or similar conduct he was treated differently than similarly-situated employees outside the protected class.[27]

If Dille can establish such a case, the burden would then shift to LVI to articulate a legitimate, non-discriminatory reason for his treatment and discharge.[28] Should LVI provide such a non-discriminatory reason for its discharge of Dille, the burden would shift back to Dille to prove "by a preponderance of the evidence" that LVI's reason was purely a pretext for illegal discrimination.[29]

To survive summary judgment and present a "submissible case on the credibility of [LVI's] explanation," Dille must present proof that "(1) the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they

---

[24] Dille contends that remarks about him "not working" or "being out of his work area" were racially motivated and his discharge for non-performance was pretextual, but does not argue that the remarks themselves were explicitly racial nor that the stated reason for discharge was directly racial. *See*, ECF # 54 at 9-11.

[25] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[26] *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992).

[27] *Id*. at 582-83.

[28] *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).

[29] *Id*. at 252-53.

were insufficient to motivate discharge."[30]  A jury "may not reject an employer's explanation [for the discharge] ... unless there is a sufficient basis *in the evidence* for doing so."[31]

In that regard, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."[32]  Thus, in determining whether LVI had an "honest belief" that Dille should have been discharged as non-productive, "the Court looks to whether [LVI] can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision [to discharge] was made."[33]

As the Sixth Circuit has noted, the key inquiry into the factual basis for the discharge is "whether [LVI] made a reasonably informed and considered decision" and not whether LVI's investigation into the reports of Dille's non-performance "left no stone unturned."[34]

### 2.    LVI is entitled to summary judgment on the racial discrimination charges.

Dille has arguably met the "relatively light" burden of establishing a prima facie case of racial discrimination under the *McDonnell Douglas* paradigm[35] by providing evidence that: (1) he was a member of a protected class, (2) he was discharged from his job, (3) he was

---

[30] *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (internal citation, quotation and emphasis omitted).

[31] *Id.* at 1083 (emphasis in original).

[32] *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).

[33] *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).

[34] *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998).

[35] *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 473 (6th Cir. 2002).

qualified for that job, and (4) he was treated differently from one other similarly situated worker.[36]

However, LVI has responded by providing a legitimate, non-discriminatory reason for discharging Dille – poor productivity.[37]  Accordingly, the burden shifts to Dille to show that LVI's reason is pretextual according to the standard articulated in *Manzer.*

On this record, and drawing all inferences in favor of Dille, the non-moving party, the Court finds that Dille has not shown that there is sufficient evidence for a jury to reject LVI's stated reason as pretextual.  It is not disputed that various LVI supervisors told Dille prior to the discharge that they had observed slow work or poor performance by Dille.[38]  It is also not disputed that Dille was transferred by LVI to a new work crew in the hope of improving his performance.[39]  Dille himself concedes that his breathing difficulties may have been "misperceived" by LVI as "working slow."[40]

---

[36] ECF # 54 (Dille's brief in opposition) at 10. When Dille was observed to be out of his work area by an LVI supervisor, he alleges that he was with a white employee who was also out of his work area, but the supervisor "made no comment to the white employee nor did he discipline him."

[37] ECF # 56 (LVI's response brief) at 5.  "LVI's decision to terminate Dille was based upon Dille's poor productivity."

[38] *See*, *id.* (individual deposition citations).

[39] A detailed account of this transfer is in the Memorandum Opinion and Order granting summary judgment to the Union. Whatever else may be argued concerning the transfer, the undisputed reason for taking this step was to address the reports of poor performance.

[40] ECF # 54 at 7.

As the Sixth Circuit held in *Majewski*, "the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."[41] Here, the uncontroverted evidence is that LVI had several reports from supervisors that Dille was slow in performing his work or seen out of his work area. Accordingly, after trying to remedy this situation by changing Dille's crew assignment, LVI made a "reasonably informed and considered decision"[42] to terminate him. As such, LVI relied "on the particularized facts that were before it at the time the decision was made."[43]

Dille's contention that this perception of slowness could now be shown to be incorrect or could have been dispelled before termination by a more thorough investigation into the effects of his breathing difficulties[44] does not make LVI's "honest belief" at the time of discharge – that Dille was unproductive based on unrefuted evidence of multiple reports from direct supervisors – an issue for the jury.

---

[41] *Majewski*, 274 F.3d at 1117.

[42] *Smith*, 155 F.3d at 807.

[43] *Braithwaite*, 258 F.3d at 494.

[44] There is no evidence of record that at the time of the supervisors' complaints Dille raised the issue with LVI that any perception of poor performance or being out of his work area was misplaced since his actions were due to a breathing disorder. Dille's only response was to contend that the supervisors' observations were racially motivated.

C.    **Disability discrimination**

1.    *Federal law*

In order to state a federal claim of discrimination based on a disability pursuant to the ADA, a plaintiff, by statute, must first file such a claim with the EEOC within 300 days of the alleged discrimination.[45]  Failure to do so bars the party from initiating a civil suit.[46]

Here, Dille did file a timely complaint with the EEOC.[47]  However, an examination of that EEOC charge discloses that Dille only alleged racial discrimination and retaliation in that filing and did not mention "disability" as a basis for the discrimination.[48]

LVI contends that this failure to raise disability as a basis for any discrimination in the charge presented to the EEOC is fatal to Dille's present claim under federal law.[49]  The Court agrees.  The fact that Dille did not assert a charge of discrimination based on disability to the EEOC within 300 days of the alleged discrimination bars him from raising that claim

---

[45] 42 U.S.C. § 2000e-5(e).

[46] *Gould v. Case Western Reserve Univ.*, 369 F. Supp. 2d 915, 917-18 (N.D. Ohio 2005).

[47] ECF # 14, Ex. A.

[48] *Id.* In addition to only checking the boxes for race and retaliation on the complaint form – leaving the box marked "disability" unmarked – Dille also wrote in his description of the particulars of his case that he believed he was discriminated against due to his race and in retaliation for complaining of racial discrimination, again explicitly not citing disability as a basis for the purported discrimination.

[49] ECF # 56 at 7.

here.[50]  LVI is, therefore, entitled to summary judgment in its favor as to any federal law claims of discrimination based on a disability.

## 2.    *State law disability discrimination claim*

Ohio statutory law[51] prohibits an employer from discriminating against an employee because of a disability.  The Ohio Supreme Court has determined that disability claims made pursuant to the Ohio statute are to be analyzed according to the norms set forth in federal regulations and cases interpreting the Americans with Disabilities Act.[52]

As stated by the Sixth Circuit in *Hopkins*,[53] a plaintiff seeking to make out a case of discrimination based on a disability proceeds according to the following rubric:

> [A plaintiff] may attempt to establish unlawful discrimination [on the basis of a disability] by introducing direct evidence of intentional discrimination, including evidence that the employer relied on the plaintiff's disability in making its employment decision.  Where there is no direct evidence of discrimination, a plaintiff can set forth a prima facie case of handicap discrimination by establishing that (1) he is disabled; (2) he is otherwise qualified for the position; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) after ejection or termination, the position remained opened, or the disabled individual was replaced by a member outside the protected class.[54]

---

[50] *Gould*, 369 F. Supp. 2d at 917-18.

[51] Ohio Rev. Code § 4112.02.

[52] *Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St. 3d 569, 573, 697 N.E.2d 204, 207 (1998); *see*, 42 U.S.C. § 12101 *et seq.*

[53] *Hopkins v. Elec. Data Syss. Corp.*, 196 F.3d 655 (6th Cir. 1999).

[54] *Id.* at 660 (internal citations omitted).

Similar to the cases alleging discrimination by race, if the plaintiff can establish a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment decision.[55]  Should the employer submit evidence of such a legitimate reason, the burden shifts back to the employee to establish that the stated reason was purely pretextual.[56]

Here, LVI contends that Dille has not met his burden in establishing a prima facie case of discrimination by disability because he cannot show – as is required by the first element of the test – that he is "disabled."  LVI maintains that Dille's breathing or sinus impairment did not constitute a "disability" because it was a condition correctable by wearing a respirator during asbestos abatement work and so did not "substantially limit" a major life activity, such as work.[57]

A physical impairment "may affect an individual's life without [that person] becoming disabled."[58]  To qualify as a disability under the ADA, a physical or mental impairment must "substantially limit" one or more of an individual's "major life activities," such as working.[59]

In interpreting this statutory provision of the ADA, federal regulations state that the term "substantially limits" in the context of work means that the individual is "significantly

---

[55] *Id*.

[56] *Id.*

[57] ECF # 56 at 8, quoting *Sutton v. United Air Lines, Inc*., 527 U.S. 471, 482 (1999).

[58] *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 627 (6th Cir. 2000) (internal citation omitted).

[59] 42 U.S.C. § 12102(2)(A).

-13-

restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. *The inability to preform a single, particular job does not constitute a substantial limitation in the major life activity of working*."[60]

Moreover, federal law provides that an employer must make a reasonable accommodation, when requested, to an employee's condition.  Unlawful discrimination occurs only when the employer denies the requested accommodation.[61]

Here, Dille does not contend that his sinus condition makes him incapable of performing even the single job of asbestos removal.  Rather, he admits that he can perform this particular task while wearing a respirator.  In addition, he does not dispute that he received the respirator he requested from LVI before being asked to commence this job.

Thus, Dille's condition does not "substantially limit" his ability to perform work for which he is qualified, but merely requires him to take a measure – which LVI accommodated – to correct the condition before commencing work on one particular job.  As such, Dille's sinus or breathing condition does not make him "disabled" as a matter of law under the ADA. Accordingly, LVI is entitled to summary judgment on the state law claim of discrimination based on a disability because Dille has not established the first element of a prima facie case.

---

[60] 29 C.F.R. § 1630.2(j)(3) (emphasis added).

[61] *Lockard v. Gen. Motors Corp.*, 128 F. Supp. 2d 458, 466-67 (N.D. Ohio 2001).

**D.     Retaliation**

*1.     Federal law standard*

In order to establish a case of retaliatory discharge pursuant to 42 U.S.C. § 2000e,[62]

a plaintiff must show:

> (1) that [he] engaged in a protected activity; (2) that the defendant knew of the existence of this exercise of [his] protected rights; (3) that defendant consequently took an employment action adverse to plaintiff; and (4) there was a causal connection between the protected activity and adverse employment action.[63]

To establish a "causal connection" between the protected activity and the adverse

employment action, a plaintiff must produce sufficient evidence for a jury to infer that the

defendant would not have taken the adverse action had the plaintiff not engaged in the

protected activity.[64]   Temporal proximity alone, without other direct or circumstantial

evidence, is generally insufficient to support a finding of causal connection.[65]

Once this prima facie case is made, the employer may rebut it by providing a

legitimate non-retaliatory reason for the adverse employment action.[66] The burden then shifts

to the plaintiff to demonstrate that the employer's stated reason for the adverse employment

---

[62] The test for establishing retaliation under Ohio Rev. Code § 4112 "is identical to the burden for establishing retaliation under the federal employment laws." *Bukta v. J.C. Penney Company, Inc.*, 359 F. Supp. 2d 649, 671 n.15 (N.D. Ohio 2004) (citation omitted).

[63] *Balmer v. HCA, Inc.*, 423 F.3d 606, 613-14 (6th Cir. 2005) (citation omitted).

[64] *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

[65] *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000).

[66] *Balmer*, 423 F.3d at 614 (citation omitted).

action was a pretext for retaliation.[67]  The plaintiff must submit sufficient evidence from which a jury could reasonably reject the employer's explanation and infer that the plaintiff had been intentionally discriminated against.[68]

## 2.    *Dille has not established that LVI retaliated against him.*

Dille contends that he was terminated because LVI knew that he intended to file an EEOC complaint against the company.[69]  LVI responds that there is no evidence that anyone at LVI knew of Dille's intentions at the time he was discharged, and Dille did not actually file such a complaint until after his termination by LVI.[70]

As LVI details, the evidence in the depositions of both Dille and LVI managers is in accord that LVI personnel were unaware of any intent by Dille to complain to the EEOC before the decision was made to discharge Dille.[71]  Without such evidence, Dille cannot

---

[67] *Id.* (citation omitted).

[68] *Id.* (citation omitted).

[69] ECF # 14 at ¶¶ 60-62.

[70] ECF # 53 at 14.

[71] *Id.*, citing deposition testimony of Dille, Gould, Lupkes, Smith, Wilson, and Johnson.

-16-

prove the second element of the required prima facie case – that LVI knew of the exercise of a protected right by Dille.[72]

Moreover, even if Dille could arguably survive the second step by claiming that someone from LVI must have heard or remembered him making a statement about filing an EEOC claim, the mere "temporal proximity" of the discharge to such a comment would be insufficient to establish the fourth element of a prima facie case – that there is a "causal connection" between the comment and the discharge.[73]  There is no additional evidence, either direct or circumstantial, to support a finding that temporal proximity is indicative of causality.

In addition, Dille has not, as noted earlier, refuted LVI's stated reason for discharging him.  As such, even if Dille could make a prima facie case of retaliatory discharge, there is

_____

[72] Dille's mere statement of intent to file an EEOC charge at some later date appears to be outside the protection of the so-called "participation" clause which prohibits retaliation for participating "in any manner" in a Title VII investigation.  As was held in *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989), it is the actual instigation of a charge or complaint, including visiting a government office to inquire about filing, which is viewed as "participating" in an investigation. *Id.*  Merely threatening to file a charge is not classified under the "participation" clause, but analyzed under the clause prohibiting retaliation against an employee who has "opposed" violations of discrimination law.  *Id.*  Here, it is not clear what specifically illegal employment practice Dille was "opposing" by commenting on a perceived racial basis for a supervisor's remarks on his work performance and how his discharge was a retaliation for that opposition.  As the Sixth Circuit states in *Booker*, "a vague charge of discrimination in an internal [communication with the employer] is insufficient to constitute [protected] opposition to an unlawful employment practice." *Id.*  Notwithstanding that Dille has arguably failed to establish that he exercised any protected right prior to his discharge – the first required element of a prima facie case – LVI is entitled to summary judgment because Dille has failed to establish a prima facie case in other mandatory elements.

[73] *Balmer*, 423 F.3d at 614 (citation omitted).

no evidence by which a jury could discredit LVI's proffered reason for the termination – that Dille was discharged for being unproductive.

Accordingly, LVI is entitled to summary judgment in its favor on the claim of retaliation.

**E.     Wrongful termination in violation of public policy**

*1.     Legal standard*

Dille asserts that his discharge violated public policy because he brought to LVI's attention that there was unlawful discrimination occurring at the job site.  As LVI notes, such cause of action is cognizable only under Ohio law.[74]

In *Knox v. Neaton Auto Products Manufacturing, Inc.*,[75] the Sixth Circuit stated:

In order to establish a claim under Ohio law for wrongful discharge in violation of public policy, a plaintiff must prove the following four elements: (1) a clear public policy manifested in a statute, regulation or the common law; (2) that discharging an employee under circumstances like those involved would jeopardize the policy; (3) that the discharge at issue was motivated by conduct related to the policy; and (4) that there was no overriding business justification for the discharge.[76]

Whether a clear public policy exists and whether the plaintiff's discharge would jeopardize that policy are questions of law to be determined by the court.[77]  The issues of whether the discharge was motivated by conduct related to the policy and the justification

---

[74] ECF # 53 at 16, citing *Plant v. Morton Int'l*, 212 F.3d 929, 939 (6th Cir. 2000).

[75] *Knox v. Neaton Auto Prods. Mfg.*, 375 F.3d 451 (6th Cir. 2004).

[76] *Id*. at 460.

[77] *Morris v. Family Dollar Stores of Ohio*, No. 1:05-cv-2211, 2007 WL 893051, at *12 (N.D. Ohio March 21, 2007) (citation omitted).

-18-

for the discharge are matters for the jury.[78]  These final two issue are equivalent to finding

a legitimate, non-discriminatory reason for the discharge pursuant to statutory analysis.[79]

Where the only source of the public policy opposing the discharge is a statute that

contains its own remedies for a violation, the Ohio Supreme Court has held that the remedy

of imposing separate tort liability for the dismissal is unnecessary:

> Simply put, there is no need to recognize a common-law action for wrongful
> discharge if there already exists a statutory remedy that protects society's
> interests. In that situation, the public policy expressed in the statute would not
> be jeopardized by the absence of a common-law wrongful-discharge action in
> tort because an aggrieved employee has an alternative means of vindicating his
> or her statutory rights and thereby discouraging an employer from engaging
> in unlawful activities.[80]

In that regard, while the Ohio Supreme Court has not ruled as to whether a remedy

in tort is available when a plaintiff elects to seek relief for a wrongful discharge pursuant to

a statute, Ohio appellate courts "generally do not allow a plaintiff to pursue both remedies."[81]

Thus, if a plaintiff who has sued pursuant to an anti-discrimination statute cannot

establish a violation of that statute, Ohio courts have denied alternative relief under the

discharge in violation of public policy tort for one of two closely-related reasons: either

because, under the Ohio Supreme Court's reasoning in *Wiles*, there is no ground for

employing a common-law remedy where a statutory one exists or the plaintiff has not cited

---

[78] *Id.*

[79] *Knox*, 375 F.3d at 460.

[80] *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 244, 773 N.E.2d 526, 531 (2002).

[81] *White v. Drs. Camm & Golian, D.D.S., Inc.*, No. 1:04-cv-1380, 2005 WL 2216945 at *14 (N.D. Ohio September 12, 2005) (collecting cases).

any other policy at risk in the termination except that embodied in the statute which has its own remedy for a violation.

**2.      *Dille's discharge did not jeopardize any public policy not otherwise covered by a statute.***

As noted earlier, Dille's breathing condition is not a disability under either federal or Ohio law.  Therefore, discharging him does not put at risk any public policy protecting the disabled.

Further, Dille was not able to make a prima facie case that his discharge violated the statute[s] barring racial discrimination, discrimination as to disability, or the statute[s] prohibiting retaliatory discharge.  He also did not cite any other policy – beyond those embodied in the statutes – that were allegedly put at risk by his discharge.

Accordingly, either because the statutes are his exclusive remedies or because he cannot show what other non-statutory policy – which can only be enforced by employing the common-law tort remedy – was implicated here, Dille has not met either the first or second parts of the *Knox* standard for a case of wrongful discharge in violation of public policy.

Finally, even if Dille could satisfy the first two *Knox* factors, there is no evidence, as previously noted, by which a jury could reasonably negate LVI's legitimate, non-discriminatory basis for the discharge.

Accordingly, LVI is entitled to judgment as a matter of law as to the state law claim that it wrongfully discharged Dille in violation of public policy.

**F.     Veteran's rights**

Dille claims that his discharge violated both federal[82] and state[83] laws prohibiting discrimination against veterans.[84]   He contends that, pursuant to these statutes, he was entitled to receive "reasonable notice of how [his] performance [could] be improved" prior to being subject to discharge.[85]

LVI maintains that both statutes are crafted to ensure that veterans who must be absent from the workforce due to service commitments are afforded "prompt re-employment" without discrimination when they complete military service.[86]  LVI argues that this emphasis on "re-employment rights" in the statutes is at variance with Dille's situation, where he had been out of the U.S. Air Force and in the civilian workforce for many years before he obtained a job at LVI.[87]   Nor, it asserts, was Dille a homeless veteran for whom the statutes create special rights.[88]   Consequently, according to LVI, because Dille was neither a newly discharged veteran seeking "prompt re-employment" nor a homeless veteran, the provisions

---

[82] 38 U.S.C. § 4301 *et seq.*

[83] Ohio Rev. Code § 5903.01 *et seq.*

[84] *See*, ECF # 54 at 19-20.

[85] ECF # 14 at ¶¶ 75-77.

[86] ECF # 53 at 17.

[87] *Id.*

[88] *Id.*

of the statute affording a right to reasonable notice regarding deficient work performance

prior to discharge are inapplicable.[89]

### 1.      *Federal law standard*

"The Uniformed Services Employment and Reemployment Rights Act of 1994

(USERRA), 38 U.S.C. § 4301, *et seq*., was enacted by Congress to 'prohibit discrimination

against persons because of their service in the uniformed services.'"[90]  As such, a plaintiff

seeking to establish a prima facie case that an employer discriminated him "because of [his]

service in the uniformed services" must show that his protected status – intended, current or

former service in the uniformed military – was "a motivating factor" in the adverse

employment action.[91]

To establish that military service was "a motivating factor" in an adverse employment

action, a plaintiff need not show that it was the sole cause of the action, but rather that it was

one of the factors "the defendant relied on, took into account, considered, or conditioned its

decision on that consideration."[92]

_____

[89] *Id.*

[90] *Tagget v. Eaton Corp.*, No. 00-10016-BC, 2001 WL 1397289, at *3 (E.D. Mich. November 7, 2001), quoting 38 U.S.C. § 4301(a)(3).

[91] *Curby v. Archon*, 216 F.3d 549, 557 (6th Cir. 2000).

[92] *Martin v. AutoZone, Inc.*, 411 F. Supp. 2d 872, 880 (S.D. Ohio 2005), quoting *Robinson v. Morris Moore Chevrolet-Buick*, 974 F. Supp. 571, 576 (E.D. Texas 1997).

-22-

Because the federal USERRA covers "discrimination in initial employment, reemployment, retention in employment, and promotion,"[93] its scope is considerably broader than that suggested by LVI, which appears to view its protection as limited solely to matters of re-employment or rights of homeless veterans.  However, the Ohio law is restricted by its own terms to "reinstatement and reemployment rights" of veterans.[94]

**2.      *Dille has not established that his military service was a "motivating factor" in his discharge.***

Dille has the burden under federal law of showing that his prior military service was a "motivating factor" in his dismissal by LVI.[95]  No such showing is even attempted.  There is not the slightest evidence in this record that LVI "relied on, took into account, considered, or conditioned its decision"[96] to terminate Dille on the fact that Dille had served in the Air Force 18 years before he came to work at LVI.  Thus, LVI is entitled to summary judgment in its favor as to the federal claim asserted under the USERRA.

In addition, because the Ohio statute is more limited and focused only on re-employment and reinstatement rights of returning veterans, LVI is also entitled to summary judgment on that claim as well.

Moreover, federal courts in Ohio have concluded that the USERRA provides its own adequate remedies for violations and thus a plaintiff may not maintain an Ohio tort action for

---

[93] *Curby*, 216 F.3d at 557.

[94] Ohio Rev. Code § 5903.02(A).

[95] *Curby*, 26 F.3d at 557.

[96] *Martin*, 411 F. Supp. 2d at 880.

wrongful discharge in violation of public policy based on grounds covered by the USERRA.[97]

### G.    Breach of the collective bargaining agreement

Dille contends that LVI breached the collective bargaining agreement (CBA) between LVI and Local 310 when it discriminated against Dille due to his race – something prohibited by the CBA – and by denying him procedural rights guaranteed by the contract.[98] LVI responds that Dille has presented a so-called "hybrid 301 suit" and that his failure to establish breach on the part of either party would be fatal to his claim against the other party.[99]

### *1.    The claim against the Union*

As more fully discussed in the Order granting summary judgment to Local 310,[100] the correct analysis of Dille's claim against the Union involved whether the Union breached its federally-established statutory duty of fair representation created under Section 9(a) of the National Labor Relations Act,  not whether there was a breach of the collective bargaining agreement requiring recourse to Section 301 of the Act.

Essentially, Dille's right concerning the Union – to be represented without hostility or discrimination and with complete good faith and honesty – arises from the application of fiduciary principles to the grant of exclusive power to the Union to represent all employees

---

[97] *Id.*; *Schmauch v. Honda of Am. Mfg.*, 311 F. Supp. 2d 631, 635 (S.D. Ohio 2003).

[98] ECF # 14 at ¶¶ 82-116; *see also*, ECF # 54 at 17-18.

[99] ECF # 53 at 19-20.

[100] ECF # 58.

in a bargaining unit.[101] That duty is related to and complements the duties protected under Section 301, but it is not identical and is analytically distinct.[102] That duty is wholly a creation of federal law.[103]

2.      *Standard for evaluating hybrid suits alleging both a breach of the duty of fair representation against the Union and a breach of the collective bargaining agreement by the employer.*

Notwithstanding this distinction, courts have held that the duties on the company and the union are "interdependent; [such that] if the [] claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of the duty of fair representation claim against the union must necessarily fail with it."[104] As the Sixth Circuit has noted, to recover against either the company and the union in such a situation, a plaintiff "must show that the Company breached the Agreement *and* that the Union breached its duty of fair representation. ... Unless [a plaintiff] demonstrates *both* violations, he cannot succeed against either party."[105]

---

[101] *See*, *Cahoon v. Int'l Bhd. of Elec. Workers Local 261*, 175 F. Supp. 2d. 220, 225 (D. Conn. 2001).

[102] *Id*. at 226.

[103] *See*, *BIW Deceived v. Local S6*, 132 F.3d 824, 831 (1st Cir. 1997); *Richardson v. United Steelworkers*, 864 F.2d 1162, 1169-70 (5th Cir. 1989).

[104] *White v. Anchor Motor Freight, Inc*., 899 F.2d 555, 559 (6th Cir. 1990).

[105] *Bagsby v. Lewis Brothers, Inc.*, 820 F.2d 799, 801 (6th Cir. 1987) (internal citations omitted) (emphasis in original).

-25-

**3.**     ***Dille did not establish that the union breached the duty of fair representation so LVI is entitled to summary judgment on the claim that it violated the CBA.***

As discussed in the companion Order dealing with the claim against the Union, Dille did not establish that the Union breached its duty of fair representation in this case. Consequently, LVI is entitled to summary judgment on the claim that it breached the collective bargaining agreement, since the law is clear that "unless [Dille] demonstrates both violations, he cannot succeed against either party."[106]

## IV.   Conclusion

For the foregoing reasons, LVI and the individual LVI supervisors are entitled to summary judgment as to all claims asserted against them by Dille.

IT IS SO ORDERED.


Dated:   August 24, 2007                          s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

---

[106] *Id.*

-26-